IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM THOMAS COATS,

               Plaintiff,                      No. 2:10-cv-0412 KJM JFM (PC)

       vs.

HIGH DESERT STATE PRISON, et al.,    <u>ORDER AND</u>

              Defendants.          <u>FINDINGS & RECOMMENDATIONS</u>

_____/

       Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims violation of his rights under the Eighth Amendment by defendants' deliberate indifference to his serious medical needs.  This matter is before the court on plaintiff's motion to compel discovery responses and on defendants' motion for summary judgment.  Each is addressed below.

PLAINTIFF'S DISCOVERY MOTION

       On March 21, 2011, plaintiff filed a motion styled as a motion for imposition of discovery sanctions; review of the motion demonstrates that it is a motion to compel further responses to plaintiff's first and second set of interrogatories.  Discovery closed in this action on December 17, 2010, and discovery requests were to be served not later than sixty days prior to that date.  <u>See</u> Discovery and Scheduling order filed September 8, 2010, at 6.  On December 10, 2010, plaintiff moved for an extension of time to serve a first and second set of interrogatories on

1

1    defendants.  That motion was granted by order filed January 14, 2011.  That order provides that

2    the interrogatories would be timely if served on or before thirty days from the date of this order,

3    and that defendants should respond to such interrogatories within forty-five days from the date of

4    the order if the interrogatories had already been served and otherwise from the date of service of

5    the interrogatories.  Order filed January 14, 2011.  No specific extension of time was sought or

6    granted to move to compel further responses to those interrogatories.

7            Assuming arguendo that an extension of time to file a motion to compel should be

8    implied from the January 14, 2011 order, the court has reviewed plaintiff's motion to compel.

9    The motion consists primarily of defendants' responses to plaintiff's first and second set of

10   interrogatories, throughout which the handwritten notations "non-responsive", "evasive" or

11   "evasive & non-responsive" appear by several responses which consist solely of objections to

12   particular interrogatories.  The court has reviewed the interrogatories and responses by these

13   handwritten notations and finds defendants' objections well-taken.  No further responses will be

14   required.[1]

15          Other handwritten notations, including but not limited to "plaintiff disputes this"

16   and "plaintiff feels this response to be incorrect" also appear throughout the responses.

17   Plaintiff's dispute with a substantive response, without more, is an insufficient basis on which to

18   require a further response.

19          For the foregoing reasons, plaintiff's discovery motion will be denied.

                        DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

21   I.  Summary Judgment Standards Under Rule 56

22

23          [1] One of the primary focuses of the interrogatories appears to be grounded in an unstated
     contention by plaintiff that the medical judgment of a physician's assistant is not equal, for
24   purposes of an Eighth Amendment claim, to the medical judgment of a physician.  Plaintiff has
     presented no legal authority in his opposition to defendants' motion for summary judgment to
25   suggest that the medical judgment of defendant Miranda, a physician's assistant, was insufficient
     as a matter of law to support the decision he made, challenged by plaintiff in this action, to
26   discontinue several chronos plaintiff had received from physicians at other prisons.

1    Summary judgment is appropriate when it is demonstrated that there exists "no

2    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

3    matter of law." Fed. R. Civ. P. 56(c).

4    Under summary judgment practice, the moving party

5    always bears the initial responsibility of informing the district court
     of the basis for its motion, and identifying those portions of "the
6    pleadings, depositions, answers to interrogatories, and admissions
     on file, together with the affidavits, if any," which it believes
7    demonstrate the absence of a genuine issue of material fact.

8    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

9    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

10   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

11   to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered,

12   after adequate time for discovery and upon motion, against a party who fails to make a showing

13   sufficient to establish the existence of an element essential to that party's case, and on which that

14   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

15   concerning an essential element of the nonmoving party's case necessarily renders all other facts

16   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

17   whatever is before the district court demonstrates that the standard for entry of summary

18   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

19   If the moving party meets its initial responsibility, the burden then shifts to the

20   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

21   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

22   establish the existence of this factual dispute, the opposing party may not rely upon the

23   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

24   form of affidavits, and/or admissible discovery material, in support of its contention that the

25   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

26   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

3

1   of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

2   (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

3   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

4   return a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,

5   1436 (9th Cir. 1987).

6          In the endeavor to establish the existence of a factual dispute, the opposing party

7   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

8   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

9   versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

10  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

11  genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

12  committee's note on 1963 amendments).

13         In resolving the summary judgment motion, the court examines the pleadings,

14  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

15  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>,

16  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

17  court must be drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.

18  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

19  produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen</u>

20  <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.

21  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

22  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

23  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

24  'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

25         On July 1, 2010, the court advised plaintiff of the requirements for opposing a

26  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Rand v. Rowland</u>, 154

4

1   F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

2   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

3   II.  Undisputed Facts

4               At all times relevant to this action plaintiff has been an inmate in the California

5   Department of Corrections and Rehabilitation (CDCR).  At all times relevant to this action,

6   defendant Miranda was a certified physician's assistant working at High Desert State Prison

7   (High Desert), defendant Nepomuceno was the Chief Physician and Surgeon at High Desert,

8   defendant Swingle was the Chief Medical Officer at High Desert, and defendant Walker was the

9   Chief of the California Prison Health Care Services Office of Third Level Appeals – Health Care.

10              Plaintiff has a medical history that includes a seizure disorder, chronic arthritis in

11  his right knee, and recurrent sciatica.  Ex. D to Plaintiff's Response to Defendants' Motion for

12  Summary Judgment, filed March 23, 2011.  While incarcerated in the 1990s, plaintiff had several

13  chronos for placement on a lower tier in a lower bunk.  See id.

14              From December 12, 2007 to January 27, 2009, plaintiff was housed at Deuel

15  Vocational Institution (DVI).  On August 12, 2008, a physician at DVI issued a "Comprehensive

16  Accommodation Chrono" for a ground floor cell, bottom bunk, and wooden cane for plaintiff as

17  a "permanent accommodation."  Ex. A to Declaration of Custodian of Medical Records in

18  Support of Motion for Summary Judgment or, in the Alternative, Summary Adjudication, filed

19  March 11, 2011.[2]  Pursuant to the Chrono, permanent accommodations are to be reviewed

20  annually and to be "honored as a permanent chrono at all institutions."  Id.  On September 17,

21  2008, another physician completed a form indicating that plaintiff had a mobility impairment

22  requiring "relatively level terrain and no obstructions in path of travel" and that he was walking

23  well with a cane.  Defendants' Ex. B.  On November 24, 2008, another medical official ordered

24  chronos for plaintiff for a lower bunk/lower tier for 120 days, a back brace for 60 days, a right

25

26              [2]  Hereafter, all exhibits appended to this declaration will be identified by their letter as
     Defendants' Ex.

1  knee brace for 120 days, a wood cane for 120 days, a cotton blanket for 120 days, and a

2  continuance of a previously ordered egg crate mattress for 120 days.  Defendants' Ex. C at 1.  On

3  the same day, plaintiff was referred to physical therapy for back pain, with a note that the

4  physician wanted to  discontinue the back brace after physical therapy, and for chronic right knee

5  pain.  Id. at 1-2.  In addition, on the same day another Comprehensive Accommodation Chrono

6  was completed, requiring all of the accommodations required by the August 12, 2008 chrono, but

7  this time as temporary accommodations.  Id. at 3.

8          Plaintiff was transferred to High Desert State Prison on January 27, 2009.

9  Defendants' Ex. D.  On July 8, 2009, plaintiff was seen by defendant Miranda for an evaluation

10  under the Americans with Disabilities Act (ADA).  Defendants' Ex. E.  On exam, defendant

11  Miranda noted "all joints [ ] complete ROM [ ] flex/ext ADD/ABD – no pedal edema/swelling."

12  Id.  On examination of plaintiff's back, he noted "limited ROM up to 90 degrees [ ] waist flexion

13  neg leg raise test [ ]."  Id.  Defendant Miranda noted that plaintiff had been "observed to walk >

14  100 yds without need for cane."  Id.  Defendant Miranda ordered plaintiff's ADA vest, cane,

15  back and right knee brace, egg crate, cotton bedding, lower bunk and lower tier discontinued.  Id.

16  Defendant Miranda also found plaintiff had no physical limitations to job assignments.  Id.

17  Defendant Miranda also found that plaintiff had no medical condition that warranted placement

18  in a disability program.  Id.

19          On August 19, 2009, defendant Miranda saw plaintiff again for a medical visit.

20  Defendants' Ex. F.  Defendant Miranda reported that plaintiff stated that he had right sciatica and

21  should have a lower bunk chrono.  Id.  Defendant Miranda found that plaintiff "looks for pretexts

22  to accomadate [sic] his need and insistence for a lower bunk-not a cane or special shoes or

23  additional medication.  He has appealed for not having a lower bunk chrono and eggcrate

24  mattress, and it sill upset."  On examination of plaintiff's back, defendant Miranda found

25  "[c]omplete ROM with forward waist flexion > 90 degrees.  Negative leg raise bilaterally > 30

26  degrees.  Side tilt, rotational and extension are normal."  Id.  Defendant Miranda also found that

1   plaintiff had complete range of motion with flexion, extension, adduction and abduction in his

2   extremities.  Id.  Defendant Miranda referred plaintiff to podiatry for complaints of heel pain.  Id.

3          On November 5, 2009, plaintiff was seen by a podiatrist.  Defendants' Ex. G.  The

4   podiatrist noted, inter alia, that plaintiff wanted a cane and a lower bunk/lower tier chrono, but

5   the podiatrist did not think that plaintiff's foot problem provided medical justification for those

6   chronos.  Id.

7          On August 2, 2009, plaintiff filed an inmate appeal grieving defendant Miranda's

8   discontinuance of all of the chronos.  Defendants' Ex. H.  Plaintiff's grievance was denied at the

9   first level of review by defendant Nepomuceno.  Defendants' Ex. I.  Plaintiff's grievance was

10   denied at the second level of review by defendant Swingle.  Defendants' Ex. J.  Plaintiff's

11   grievance was denied at the third and final level of review by defendant Walker.  Defendants' Ex.

12   K.

13   III.  Defendants' Motion

14          Defendants seek summary judgment on the ground that there is no evidence that

15   any of them acted with deliberate indifference to any serious medical need plaintiff had.[3]  In the

16   alternative, defendants contend they are entitled to qualified immunity.

17          In order to establish a violation of the Eighth Amendment based on alleged

18   inadequate medical care, an inmate must prove acts or omissions sufficiently harmful to evidence

19   deliberate indifference to serious medical needs.  Hudson v. McMillian, 503 U.S. 1, 5 (1992);

20   Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Mere indifference, medical malpractice, or

21   negligence will not support a cause of action under the Eighth Amendment.  See Broughton v.

22   Cutter Lab., 622 F.2d 458, 460 (9th Cir.1980).  A difference of medical opinion about treatment,

23   /////

24

25          [3]  In their motion, defendants state that they concede "for purposes of this motion only,
    that a question of fact exists as to whether plaintiff faced a sufficiently serious medical need."
26   Defendants' Motion for Summary Judgment, filed March 11, 2011, at 6.

1    without more, does not amount to a deliberate indifference to serious medical needs.  See

2    Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989).

3             All four defendants contend that plaintiff's claim against them is without merit

4    because it is based solely on plaintiff's disagreement with their medical and administrative

5    judgments.  Defendants Nepomuceno, Swingle and Walker also contend that plaintiff's claim

6    against them is not cognizable because their only involvement in the events complained of

7    consisted of review of plaintiff's inmate appeal, which cannot form the basis for liability in a §

8    1983 action.

9             In the instant case, plaintiff's Eighth Amendment claim is predicated on his

10   difference of opinion with defendant Miranda's medical determination that plaintiff had no

11   medical condition that warranted accommodation by any of the chronos that defendant Miranda

12   discontinued.  While plaintiff has presented evidence of a medical history that includes seizures,

13   that evidence suggests that his last seizure was in June 1993.  See Plaintiff's Ex. D.  Moreover,

14   plaintiff has presented no evidence that defendant Miranda was deliberately indifferent to

15   plaintiff's medical history or his present medical condition in performing either the July 2009 or

16   the August 2009 exams or in making the orders that followed the July 2009 exam.  Nor is there

17   any evidence that defendants Nepomuceno, Swingle, or Walker acted with deliberate indifference

18   to plaintiff in denying his inmate grievance, thereby confirming defendant Miranda's decision to

19   discontinue the chronos.  For that reason, defendants are entitled to summary judgment on

20   plaintiff's Eighth Amendment claim.

21             "The doctrine of qualified immunity protects government officials 'from liability

22   for civil damages insofar as their conduct does not violate clearly established statutory or

23   constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan,

24   555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Resolving

25   the defense of qualified immunity involves a two-prong analysis:  courts look to whether the

26   facts "show the officer's conduct violated a constitutional right," and "whether the right was

clearly established" at the time of the alleged unlawful action. <u>See Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), *overruled in part by* <u>Pearson</u>.[4]  Since the undisputed facts show that defendants did not violate plaintiff's rights under the Eighth Amendment, the court need not reach the defense of qualified immunity.

           For all of the foregoing reasons, defendants are entitled to summary judgment.

           In accordance with the above, IT IS HEREBY ORDERED that plaintiff's March 21, 2011 discovery motion (Docket No. 39) is denied; and

           IT IS HEREBY RECOMMENDED that defendants's March 11, 2011 motion for summary judgment be granted.

           These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 13, 2012.


                          *[signature]*

                UNITED STATES MAGISTRATE JUDGE

12;coat0412.msj

---

[4]  In <u>Pearson</u>, the United States Supreme Court held that courts may exercise "sound discretion sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson</u> at 236.